IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SALVADOR RUBIO, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Civil Case No. 15-cv-01094-SMY-PMF |
| REBBECCA COWAN, et al., | ) ) ) |
|     Defendants. | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are plaintiff Salvador Rubio's motions for a preliminary injunction (Doc. Nos. 4, 20). Rubio is confined at Menard Correctional Center. He is proceeding on an Eighth Amendment claim, alleging that the defendants failed to protect him from a known risk of danger from hostile inmates by rejecting his requests for protective custody in June and September, 2015. Rubio is currently assigned to a cell in the North Cell House. He seeks an order directing the defendants to keep him housed in that location until this lawsuit has been resolved. An evidentiary hearing was held on December 21, 2015.

Rubio must support his request by showing that he has some likelihood of success on the merits of his Eighth Amendment claim, that he does not have an adequate remedy at law, and that he will suffer irreparable harm if the injunction is not granted. *Exell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). The Court must also consider the public interest, weighing factors in a sliding scale approach. *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2).

Rubio was a member of a street gang known as the Insane Unknowns for approximately ten years. In prison, members of the Insane Unknowns are governed by a larger, more powerful gang, the Latin Kings. Rubio has been incarcerated since 2007. In March, 2012, he walked away or "retired" his membership with the gang. On several occasions, he received communications (both verbal and written) from inmates encouraging him to quickly remove himself from the prison's general population housing unit by entering protective custody or segregation. The implied threat is that some feel he deserves to be punished for his decision to leave the gang, possibly by becoming the victim of a physical assault if he remains in general population.

Rubio is currently scheduled for release in 2065. He has been classified as a "Level E" security risk, which limits his general population housing option at Menard to the East Cell House. Rubio arrived at Menard from Pontiac in May, 2015. Shortly after he arrived, a member of the Latin Kings, known as "Criminal" approached Rubio, and Rubio informed "Criminal" that he had retired from the Insane Unknowns. Rubio subsequently received a note instructing him to check into protective custody or segregation.

Rubio applied for protective custody and was reassigned to the North Cell House while that request was being evaluated and while a final decision was being made. The protective custody unit is comprised of four groups: intake, approved, kick out, and involuntary. Although Rubio explained his concerns to the officers working in the prison's internal affairs division as well as to the members of a protective custody committee, he was not given approved (Group 2) status for protective custody because his safety concerns could not be verified or substantiated by internal affairs investigators.

After being assigned to Group 4 (kick out), Rubio eventually went to general population in the East Cell House.  There, he received additional communications reminding him that members of the Latin gangs did not want him to stay in general population.  While he was in the dining hall on October 29, 2015, an individual known as "Vampire" pulled Rubio aside and gave him instructions to go to segregation or protective custody.  Rubio believes these warnings were intended to give him an opportunity to change his mind about retiring from the gang.  Once again, Rubio tried to get approved for a housing assignment in the protective custody unit, without initial success.  He has appealed the warden's unfavorable decision and remains in the North Cell House in Group 4 kick-out while he awaits a final decision from the administrative review board.  Rubio believes that the gang's prior warnings will soon be replaced with harmful acts, and that he will be jumped on, assaulted, or stabbed if he accepts another cell assignment in general population.

Jeannette Cowan is a member of the committee that reviews protective custody requests and makes recommendations to the warden.  She confirmed that Rubio had tried three times to get approved for protective custody (in May, September, and October, 2015).  Two of those requests were fully evaluated and denied due to a lack of verification and substantiation.  Another request was rejected as a duplicate of a prior request.  Cowan testified that there are a finite number of cells available to inmates seeking protective custody, and that those cells are always full and overflowing.  When the protective custody portion of the North Cell House is full, inmates needing protection are housed in the health care unit.  She holds the opinion that most inmates want protective custody status and that some inmates try to manipulate admission to the unit in order to gain access to another inmate who has been approved for protective custody status.  Before approving protective custody, Cowen requires substantiation or

verification of the inmate's safety concerns. This is generally obtained by internal affairs investigators, who gain information regarding gang threats from confidential sources located throughout the prison. Cowan was not aware of any inmate being assaulted as punishment for a decision to retire his gang membership.

Plaintiff's likelihood of success on the merits of his Eighth Amendment claim is low. A correctional official is not liable under the Eighth Amendment unless the conduct qualifies as deliberate indifference, which is the equivalent of criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (194). Rubio cannot show that these defendants ignored his requests for protection: they listened to his concerns, made an effort to assess and verify a risk of harm, and gave him an effective level of protection while his eligibility for protective housing was being considered – through multiple levels of review. If they underestimated the risk to his safety or made the wrong housing decision, that error might qualify as negligence (which is not actionable). In these circumstances, a committee error in assessing the likelihood that Rubio will suffer future harm from hostile Latin Kings if he is not approved for protective custody would not qualify as deliberate indifference.

Rubio might be facing a substantial risk of harm. He is crossways with a gang that has members and affiliates throughout the correctional system. While Rubio has not been assaulted, he may be facing serious physical injury or death if he is returned to the East Cell House. A severe injury would not be adequately compensated by an award of money damages.

Rubio has an adequate remedy at law. His most recent request for protective custody remains pending before the administrative review board, which has authority to reevaluate protective custody requests and make a recommendation to the Director. The Director makes the final decision. 20 Ill. Admin. Code § 501.320(d). The board and Director have experience with

these issues and are better qualified than a judicial officer to gauge the level of risk and detect and correct a wrong decision about protective housing for a particular inmate.

The public interest would be served by allowing the Director and other prison officials to make difficult decisions regarding inmate housing assignments. Prison officials have a high level of expertise and maintain contact with confidential informants. They are in the best position to locate appropriate housing for plaintiff who requires a high level of security and also protection from other inmates. They are also in the best position to verify and assess the risk and ensure that those with legitimate protection needs are the only ones gaining access to inmates who have been approved for housing in the protective custody unit.

IT IS RECOMMENDED that plaintiff's requests for a preliminary injunction (Doc. Nos. 4, 20) be DENIED.

**SUBMITTED:   January 5, 2016  .**

   **s/Philip M. Frazier**
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**